UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Misc. No. 10-3258-White

UNITED STATES OF AMERICA

vs.

YANNY AGUILA URBAY,
a/k/a "Negro,"

Defendant.
_____/

# CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes __X__ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY: _____
KAREN E. GILBERT
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 771007
99 N. E. 4th Street
Miami, Florida 33132-2111
TEL (305) 961- 9161
FAX (305) 305-536-4675
Karen.gilbert@usdoj.gov

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| YANNY AGUILA URBAY, a/k/a "Negro," | ) | Case No. 10-3258-White |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  April 2009 through June 19, 2009,  in the county of  Miami-Dade  in the  Southern  District of  Florida , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 371 | Conspiracy to Possess Stolen Firearms, in violation of 18 USC 922(j) |

This criminal complaint is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Jason Wesley Van Loan
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  09/03/2010

*Judge's signature*

City and state:  Miami, Florida    Patrick A. White, Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Jason Wesley Van Loan, being duly sworn, submit this affidavit in support of the issuance of a complaint for **YANNY AGUILA URBAY ("URBAY"), a/k/a "Negro."** I am a Special Agent of the Federal Bureau of Investigation (hereinafter "FBI") and a federal law enforcement officer as defined in the Federal Rules of Criminal Procedure. I have been a Special Agent with the FBI for approximately one year and 10 months and have been assigned to the Miami Division throughout. During that time, I have been involved in investigations involving various violations of federal law, including violations dealing with firearms and weapons. This affidavit is provided for the limited purpose of establishing probable cause to support this criminal complaint. I have not included the details of all aspects of this investigation, but rather have set forth only those facts that I believe are necessary to establish probable cause for the complaint. The information in this affidavit is based upon my personal knowledge, as well as, information I have obtained from other law enforcement agents and officers, including, confidential human sources, consensually recorded conversations, and from a review of documentary materials.

## VIOLATIONS OF LAW

The facts and circumstances set forth below in this affidavit demonstrate that there is probable cause to believe that URBAY has committed an offense in violation of Title 18, United States Code, Section 371, Conspiracy to Possess Stolen Firearms, in violation of Title 18, United States Code, Section 922G).

## FACTS AND CIRCUMSTANCES SUPPORTING PROBABLE CAUSE

URBAY, a Cuban national, his co-conspirator ABDALAZIZ AZIZ HAMAYEL ("HAMAYEL"), and others yet unknown, conspired to receive and possess stolen firearms.

Initially, this investigation began when URBAY elicited the help of a confidential human source ("CHS"), on behalf of HAMAYEL, for the purpose of procuring and purchasing weapons and explosives.

On or about April 16, 2009, HAMAYEL contacted the CHS to discuss the weapons and explosives he was requesting for purchase. HAMAYEL specifically requested a quantity of 300 M-16 rifles, 9mm handguns, UZI submachine guns, silencers, and grenades. HAMAYEL also indicated he was interested in purchasing several boxes of these weapons and would be able to provide the money in advance. HAMAYEL explained that a "family friend", currently unidentified, from the same village in the West Bank, would provide the necessary funds for the purchase of the weapons and explosives. HAMAYEL indicated the "family friend" lives in Miami, Florida. The CHS later questioned HAMAYEL on the intended purpose of the weapons. HAMAYEL responded the weapons were for his people and would be sent outside of the United States.

Between April 16, 2009 and April 26, 2009, HAMAYEL contacted the CHS on several occasions to determine if the CHS had found a potential supplier of the weapons and explosives. On more than one occasion, HAMAYEL advised the CHS that he had a contact in New York who would travel to Miami, Florida, but was waiting for the CHS to find a supplier. HAMAYEL also mentioned that his New York contact was a member of "his group" and had conducted similar transactions in the past. The CHS informed HAMAYEL that he/she had located a contact that would be able to provide the weapons and explosives that HAMAYEL was interested in purchasing. On a subsequent phone call, HAMAYEL asked about the price for the weapons. The CHS advised HAMAYEL should talk to the supplier for the prices associated with weapons and explosives.

On or about May 11, 2009, the CHS arranged a meeting with HAMAYEL and URBAY. During this meeting, the CHS introduced an undercover police officer ("UC-I") to HAMAYEL and

URBAY. At the meeting, HAMAYEL advised UC-I that he was interested in purchasing M-I6 rifles, AK-47's, grenades, silencers, and handmade bombs that were detonated with a cell phone and immediately requested UC-I provide a price for the weapons.

Additional meetings between UC-I, an additional undercover police officer ("UC-2"), HAMAYEL, and URBAY occurred between May 19, 2009 and June 11, 2009 to discuss various logistical issues related to the purchase of the weapons and explosives. On numerous occasions, the UCs explained that the weapons that were being discussed were stolen.

On or about May 19, 2009, UC-I and UC-2 met with URBAY to discuss HAMAYEL and the intended use and destination for the weapons. URBAY stated he had been to the residence of HAMAYEL'S buyer. URBAY remembered that the buyer lived in Coral Gables, Florida. At the conclusion of the meeting UC-I provided pricing to URBAY for the weapons.

Additionally, URBAY discussed with UC-I a possible commission for setting up the weapons deal with HAMAYEL.

On or about May 22, 2009, UC-I and UC-2 met with HAMAYEL to discuss the weapons procurement in more detail. UC-I again explained to HAMAYEL that the weapons he was purchasing were stolen. When the UC-I stated "these are stolen weapons," HAMAYEL responded "I know, I know." HAMAYEL indicated the pricing for the weapons was too high and provided a counteroffer which he presented to the UCs on a piece of paper. UC-I and HAMAYEL discussed cell phone detonation for the bombs. HAMAYEL stated the detonation device did not need to be a phone only something which would allow his people enough time toget out of the area before the bomb exploded. HAMAYEL also told UC-I he is procuring the weapons for a man who owns a warehouse in Fort Lauderdale. HAMAYEL explained he has been dealing with the son since the father is "strong" and no one sees the father.

On May 29, 2009, UC-l and UC-2 met with HAMAYEL as a follow-up to a phone conversation during which HAMAYEL stated his "connection" wanted to see a sample of the weapons and would need to keep the samples for approximately one day. UC-l told HAMAYEL keeping the samples was not an option and UC-l asked HAMAYEL to call his "connection" to determine an acceptable agreement on showing the sample weapons. HAMAYEL refused to make the call in UC-ls presence and the meeting ended. Approximately three hours later, HAMAYEL called UC-l and advised he had spoken to his "connection" and offered to purchase the sample weapons.

On June 11, 2009, UC-l met with HAMAYEL and showed him weapons samples to include two M-16s, one AK-47, two grenades, silencers and two different remote detonation devices (one cell phone detonator and one hand held radio detonator). HAMAYEL was pleased with the weapons and told UC-l he did not want the cell phone detonator because it would not work "over there". HAMAYEL preferred the hand held radio detonator and wanted as many as UC-l could provide. HAMAYEL also asked UC-l if they could provide C-4 and UC-l told HAMAYEL it could be obtained. HAMAYEL then stated it would take approximately one week to get the money for the purchase and UC-l responded it would take approximately two weeks to procure the weapons, grenades, silencers and detonators.

The purpose of the weapons flash was to provide a visual sampling of the weapons and equipment previously requested by HAMAYEL. All the weapons used during the subject weapons flash were inert and/or rendered safe prior to the weapons flash and were supplied by the FBI, Bureau of Alcohol, Tobacco, and Firearms ("ATF"), and Air Force Office of Special Investigation ("AFOSI"). The following weapons and explosives were used during the weapons flash:

a. One (1) AK-47, plus one (1) magazine;

b. Three (3) Silencers:

c. One (1) Motorola "Walkie Talkie" by itself;

d. One (1) Motorola "Walkie Talkie", contained within the IED;

e. One (1) Nokia (AT&T) Cellular Telephone, by itself;

f. One (1) Nokia (AT&T) Cellular Telephone, contained within the IED;

g. Two (2) Grenades; and,

h. Two (2) M-16's

The AK-47 is manufactured outside of the United States and the M-16s were manufactured in Connecticut.

A few hours after the meeting, HAMAYEL telephonically contacted UC-I and asked for pictures of the weapons to show his people. HAMAYEL then told UC-I he would now be using a new cell phone. HAMAYEL explained the new cell phone is not in his name or listed to his address.

On June 12, 2009, HAMAYEL contacted UC-I and requested a photograph of all the weapons that were shown to him (HAMAYEL) during the June 11, 2009 weapons flash. The UC-I complied with the request and provided HAMAYEL the photograph he requested. HAMAYEL indicated the photograph was to be given to the money supplier as proof of the weapons and explosives available.

On June 19, 2009, HAMAYEL contacted the CHS requesting help in obtaining fraudulent driver's licenses and advised the CHS he would be gone for approximately two (2) weeks to Chicago, Illinois. However, HAMAYEL actually departed the United States for the West Bank, Palestine

On Sunday, August 29, 2010, agents learned that HAMAYEL was traveling into the United States on Monday August 30, 2010, arriving in Chicago, Illinois, from Amman, Jordan aboard

Royal Jordanian Airlines flight # 263. That same night, HAMAYEL traveled from Chicago to Miami. When he landed, he was approached by agents at Miami International Airport and arrested.


_____
Jason Wesley Van Loan
Special Agent, Federal Bureau of Investigation


Sworn and subscribed to before me
this 3rd day of September, 2010.

_____
PATRICK A. WHITE
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA